IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

BERTHA LYNETTE S.

       Plaintiff,

  v.                                      Civil Action No.
                                            5:18-CV-0045 (DEP)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

---

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

DOLSON LAW OFFICE              STEVEN R. DOLSON, ESQ.
126 North Salina Street
Suite 3B
Syracuse, NY 13202

FOR DEFENDANT:

HON. GRANT C. JAQUITH          SERGEI ADEN, ESQ.,
United States Attorney            Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
CHIEF U.S. MAGISTRATE JUDGE

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the

Acting Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on September 20, 2018, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Acting Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Acting Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

_____
David E. Peebles
U.S. Magistrate Judge

Dated: September 27, 2018
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
BERTHA S,

                                        Plaintiff,

-v-                                     5:18-CV-45

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------------x
```

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
September 20, 2018
100 South Clinton Street, Syracuse, New York

For the Plaintiff:

    LAW OFFICES OF STEVEN R. DOLSON
    126 North Salina Street
    Suite 3B
    Syracuse, New York 13202
    BY: **STEVEN R. DOLSON, ESQ.**

For the Defendant:

    SOCIAL SECURITY ADMINISTRATION
    26 Federal Plaza
    Room 3904
    New York, New York 10278
    BY: **SERGEI ADEN, ESQ.**

*Hannah F. Cavanaugh*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1           (In chambers, counsel present by telephone.  Time
2  noted:  10:18 a.m.)
3           THE COURT:  The plaintiff in this action has
4  commenced this case to challenge a determination by the Acting
5  Commissioner pursuant to 42, United States Code, Sections 405(g)
6  and 1383(c)(3).
7           The background is as follows:  The plaintiff was born
8  in May of 1968 and is currently 50 years old.  She was 48 years
9  old at the time of the hearing and 46 when her application for
10 benefits was made.  She lives in a home in Syracuse with her
11 mother.  Plaintiff has completed 12th grade.  She stands 5'2"
12 and weighs 160 pounds, although at page -- that's at page 186
13 and 54.
14          Plaintiff smokes six cigarettes per day.  She drinks
15 between three beers, that's at page 48, and four beers, at 316,
16 a day, and there's indication that those beers are actually
17 25-ounce beers.  That's at page 462 and 316.  When asked by her
18 treating source, Dr. Anumba, whether she intended to stop
19 drinking, she replied no with a smile.  That's at page 527.
20 Parenthetically, it was noted in that treatment note that she
21 had just returned from a vacation to Myrtle Beach, South
22 Carolina.
23          Plaintiff last worked on May 1, 2013.  That's at page
24 186.  She was laid off from that position, which was a seasonal
25 one.  Her past relevant work includes housekeeping at a motel, a

machine operator, a sales representative, a secretary, and a server/waitress.

Plaintiff suffers from several conditions. In support of her application for benefits at pages 54 and 186, she claimed pancreatitis, arthritis in both legs, numbness of her feet, high blood pressure, lower back pain, and insomnia. She also suffers from neuropathy and a history of alcohol abuse. Plaintiff has treated with Dr. Myles Howard at Syracuse Community Health Center. She has undergone physical therapy at both Upstate Hospital and Crouse Hospital here in Syracuse, New York. Plaintiff also claims to suffer from depression, but has not undergone any treatment. That seems to stem from stress as a result of the loss of a brother, a father, and three boyfriends. Plaintiff also treats with Dr. Emeka Anumba since 2016 and sees Dr. Anumba every three months.

Medically, plaintiff has been prescribed Naproxen for pain, Zolpidem or Ambien for sleep, folic acid, Metoprolol for blood pressure, and Vitamin B1. That's at 189 and 315. Plaintiff ambulates with the use of a cane prescribed by Dr. Howard in July of 2015. That's at page 240.

Plaintiff's daily activities include -- she does not do laundry. She does shop, she does dishes, she can clean with help, she needs help in the shower, she has no hobbies, and she sits on her porch. That's at page 316.

Procedurally, plaintiff applied for Supplemental

Social Security Income payments on April 17, 2014, alleging an onset date of April 1, 2010. That onset date was later amended to the date of the application. A hearing was conducted by Administrative Law Judge Roxanne Fuller on October 7, 2016, to address plaintiff's application. ALJ Fuller issued a decision on January 5, 2017, finding that plaintiff was not disabled at the relevant times and, therefore, ineligible for SSI payments. That became a final determination of the agency on December 8, 2017, when the Social Security Administration Appeals Council denied plaintiff's request for a review.

In her decision, ALJ Fuller applied the familiar five-step test for determining disability. She also applied the protocol for determining disability in cases where there is alcohol or substance abuse present.

At step one, she concluded plaintiff had not engaged in substantial gainful activity since April 17, 2014.

At step two, ALJ Fuller concluded that plaintiff suffers from severe conditions or impairments, including acute alcohol pancreatitis, meralgia paresthetica, peripheral neuropathy, and substance abuse.

At step three, the Administrative Law Judge concluded plaintiff's conditions did not meet or medically equal any of the listed presumptively disabling conditions considering, among others, listings 12.04 and 12.06. The ALJ went on to determine what plaintiff's residual functional capacity, or RFC, would be

    1  with the presence of her alcohol use and concluded that she
    2  retains the ability to perform sedentary work, except she can
    3  only occasionally climb ramps or stairs, never climb ladders,
    4  ropes, or scaffolds, occasionally balance, stoop, crouch, kneel,
    5  and crawl, occasional exposure to moving mechanical parts, only
    6  occasionally operate a motor vehicle, occasionally be exposed to
    7  unprotected heights, and must use a cane to ambulate.  Finally,
    8  the claimant may only perform simple routine repetitive tasks.
    9  The Administrative Law Judge then concluded that plaintiff had
    10 not engaged in any past relevant work within the meaning of the
    11 Commissioner's regulations.
    12         At step five, after noting that if the grid rules or
    13 medical vocational rules and the regulations were applied, Rule
    14 201.18 would direct a finding of no disability.  Based on the
    15 testimony of a vocational expert, however, with all of
    16 plaintiff's impairments, including the substance abuse disorder,
    17 plaintiff cannot perform any work available in the national
    18 economy.
    19         The Administrative Law Judge then proceeded to
    20 consider what plaintiff's residual functional capacity would be
    21 without the use of alcohol and concluded that she would have the
    22 same residual functional capacity with the exception of no cane
    23 requirement to ambulate.
    24         At step four, again, the Administrative Law Judge
    25 concluded plaintiff did not have any past relevant work.

1            At step five, relying on the testimony of a
2  vocational expert, the Administrative Law Judge concluded that
3  if the alcohol use stopped, plaintiff could perform as an order
4  clerk, a final assembler, and a callout operator, all of those
5  positions being sedentary in terms of exertional requirements
6  and with an SVP of two.
7            As you know, my role is limited and the review the
8  Court must make is extremely deferential.  I must determine
9  whether correct legal principles were applied, which appear to
10 be the case in this instance, and whether the determination of
11 the Commissioner is supported by substantial evidence.
12           The focus of plaintiff's argument is upon her
13 physical limitations.  As a backdrop, it is the plaintiff's
14 burden through the residual functional capacity and the step
15 four step of the analysis to demonstrate the existence of
16 limiting conditions that would result in a finding of
17 disability.
18           Let me take reaching first.  As was discussed, there
19 does not appear to be any diagnosed condition that would
20 logically preclude the plaintiff's ability to reach.  The
21 Administrative Law Judge therefore properly rejected Dr.
22 Lorensen's finding of a marked restriction on reaching.  There's
23 simply no explanation for that other than her finding of a
24 limitation when she made musculoskeletal examination.  But Dr.
25 Anumba, the treating source two years after Dr. Lorensen's

```
 1  report, in a medical statement indicated that plaintiff could
 2  frequently use her arms to reach.  That's at page 541 and 542.
 3  I find that that determination is therefore supported by
 4  substantial evidence and that it was proper to rely on the
 5  treating source in that regard.
 6            Obviously, the more difficult issue is the substance
 7  abuse analysis.  At pages 23 to 27, the Administrative Law Judge
 8  very carefully and painstakingly evaluated the record regarding
 9  alcohol abuse and its effects.  As the Commissioner argued,
10  ostensibly you could find that even without the alcohol use,
11  plaintiff would have the ability to perform sedentary work, but
12  it is noted that even under the Administrative Law Judge's
13  decision, if you take away the alcohol abuse she still limited
14  the plaintiff to sedentary work, which is extremely restrictive.
15            I note that there was a CT scan of plaintiff's head,
16  which was essentially normal.  That's at page 351.  Physical
17  therapist Kaitlin Kelly, at 369, indicated that plaintiff's
18  peripheral neuropathy was secondary to her chemical intake.  A
19  similar statement was made by Dr. Howard, the treating source,
20  in April of 2014, that's at page 334, when he indicated
21  peripheral neuropathy is secondary to ETOH, which is alcohol
22  abuse/dependence, twice on that page.
23            At page 261, Dr. O'Donnell indicated alcohol abuse
24  potentially led to peripheral neuropathy and cerebellar ataxia.
25  The Crouse Physical Therapy notes at page 514 indicate meralgia
```

1  paresthetica is alcohol induced.  And at 527, Dr. Anumba

2  suggests that the paresthetica is also related to alcohol.

3           So it's true, as plaintiff argues, that SSR 96-9p

4  suggests that if there is a need for use of a cane to balance

5  due to neurological defects or impairments, there could be

6  erosion of the job base on which either the grids or the

7  vocational expert's testimony is based.

8           I note that Dr. Lorensen indicated, however, that

9  plaintiff did not use an assistive device and found only a

10 moderate limitation in the ability to ambulate and stand.

11 That's at page 318.  There's an indication at page 425 that

12 plaintiff does not need a cane.  Physical Therapist Page

13 indicated that plaintiff was able to walk some without a cane.

14 That's at 510.  Dr. Anumba indicated that plaintiff can stand

15 for two hours and did not note any limitation in that regard,

16 that's at page 541, although did note that plaintiff walks with

17 a cane.

18          There is difficulty in walking and standing and

19 balancing, clearly plaintiff reported at that 503, 506, and 511,

20 but although there is contrary evidence -- and the contrary

21 evidence could also be substantial evidence, as you know, as

22 long as substantial evidence supports the Administrative Law

23 Judge's determination, that is sufficient, and I find that it

24 does in this regard.

25          I do not find that there is any gap in the record.

1  It was plaintiff's burden to demonstrate that her alcohol abuse
2  was not material to her limitations and work functions and the
3  ALJ clearly has the discretion to seek more evidence.  In this
4  case, there was evidence in the record that she properly relied
5  on to make her determination of what plaintiff could do without
6  alcohol intake.  And I note in that regard that plaintiff, who
7  was represented at the hearing, noted -- the representative
8  noted at page 481 that the representative's review of the record
9  was complete.
10       So on that basis, I am going to award judgment on the
11  pleadings to the defendant, affirm the Commissioner's
12  determination, and dismiss plaintiff's complaint.  It was a very
13  interesting case and I appreciate both of your written and oral
14  presentations.  I hope you have a wonderful day.
15       MR. DOLSON:  Thank you, Judge.
16       MR. ADEN:  Thank you, your Honor.
17       (Time noted:  10:33 a.m.)

1
2     CERTIFICATE OF OFFICIAL REPORTER
3
4
5     I, HANNAH F. CAVANAUGH, Official Court Reporter, in and
6  for the United States District Court for the Northern District
7  of New York, DO HEREBY CERTIFY that pursuant to Section 753,
8  Title 28, United States Code, that the foregoing is a true and
9  correct transcript of the stenographically reported proceedings
10 held in the above-entitled matter and that the transcript page
11 format is in conformance with the regulations of the Judicial
12 Conference of the United States.
13
14     Dated this 26th day of September, 2018.
15
16     x *Hannah F. Cavanaugh*
17     HANNAH F. CAVANAUGH
18     Official U.S. Court Reporter
19
20
21
22
23
24
25